[No. 1173. Decided March 24, 1894.]

THOMAS GARNEAU *et al.*, *Respondents*, v. THE PORT
BLAKELY MILL COMPANY, *Appellant.*

LOGGERS' LIENS — EFFECT OF REPEAL OF STATUTE — ENFORCEMENT
OF LIEN — EVIDENCE — PLACE OF CUTTING — CORPORATE EXIST-
ENCE — ORIGINAL LIEN NOTICE — TIME CHECKS — DECREE — AT-
TORNEY FEES — DAMAGES FOR ELOIGNMENT.

A statutory right of lien given loggers for labor in getting out logs becomes such a part of the contract for such labor as to be unaffected by the repeal of the statute pending the enforcement of the lien..

Where the complaint alleges that defendant is a corporation organized and existing under the laws of the state, and the only answer of the corporation is a general denial, it cannot afterwards complain that there was no affirmative proof of its corporate existence.

In an action to enforce a logger's lien, proof must be made that the logs were cut in the county where the lien notice was filed.

As all laws were continued in force and all officers continued in office by Const., art. 27, §§ 2, 6, the county auditor is an officer duly authorized to administer oaths as provided by § 2717, Code 1881.

The original lien notice which has been filed for record and contains the endorsement of that fact together with the volume and page of the record certified under the seal of the county auditor, is admissible in evidence for the purpose of proving that a proper claim of lien had been verified and had been filed for record in the proper office.

In an action to foreclose a logger's lien, time checks given by the employer are competent as evidence even against a third party impleaded as defendant on account of some interest in the logs.

Where a number of lien claimants have united in one suit for the foreclosure of their respective liens, an attorney's fee of twenty dollars in each case is not excessive.

Where a large number of lien claimants join in a proceeding for the foreclosure of loggers' liens, and the pleading, proofs and findings establish that each lienor assisted in producing certain logs of which the marks and quantity in feet were given, the decree should set out the logs upon which the several recoveries can be had.

A personal judgment against a third party for the removal of logs beyond the jurisdiction of the county, under Laws 1893, p. 428, authorizing the recovery of damages therefor in the proceeding to foreclose liens, is unwarranted when the act of eloignment was committed prior to the taking effect of said law.

A judgment for damages for the eloignment of logs is unwarranted when there is no proof of the value of the logs.

*Appeal from Superior Court, Mason County.*

*Struve, Allen, Hughes & McMicken,* and *James Kiefer,* for appellant.

*Joseph A. McDonald,* for respondents.

The opinion of the court was delivered by

STILES, J.— The loggers' liens involved in this case were filed for record in December, 1892; suit was brought the following January, and the case was tried June 25, 1893. Pending the hearing the legislature passed a new act on the subject, which went into effect before the trial. Laws 1893, p. 428.    Sec. 21 of this act repealed all acts and parts of acts inconsistent with its provisions, and contained no saving clause covering existing undetermined liens.

The appellant, which was brought into the foreclosure action as a party having or claiming to have some interest in or claim to the logs, and against whom an alternative personal judgment was rendered, takes the ground that as the right to a lien of this kind is wholly statutory, it is a remedy only, and therefore ceased to exist when the law under which it accrued was repealed. The respondents maintain that it is more than a mere remedy, and is in the nature of a vested right, because the law became a part of the contract under which they went to work and gave the principal defendant credit for their wages, so that the right to maintain and foreclose the lien, if necessary to their payment, could not be taken away by the legislature. They also argue that the new statute is a mere continuation of the former one on the same subject, having in view only a prospective operation, and that it is not inconsistent with any of its provisions to sustain the binding force of an existing lien, although its foreclosure may have to be accomplished under the procedure prescribed by the new law. The question has been decided both ways by the courts of different states, the leading authorities holding that the right of lien is a mere remedy being: *Woodbury v. Grimes*, 1 Col. 103; *Purmort v. Tucker Lumber Co.*, 2 Col. 470; *Bailey v. Mason*, 4 Minn. 546; *Willim v. Bernheimer*, 5 Minn. 288; *Bangor v. Goding*, 35 Me. 74; *Frost v. Ilsley*,

54 Me. 345; *Hanes v. Wadey*, 73 Mich. 178 (41 N. W. 222); *Templeton v. Horne*, 82 Ill. 492; *Evans v. Montgomery*, 4 Watts & S. 220; Phillips, Mechanics' Liens, § 28. An implication to the same effect was made in *Seattle, etc., R. R. Co. v. Ah Kow*, 2 Wash. T. 43 (3 Pac. 188).

To the contrary are: *Skyrme v. Occidental, etc., Mining Co.*, 8 Nev. 219; *Taylor v. Dahn*, 6 Ind. App. 672 (34 N. E. 122); *Goodbub v. Estate of Hornung*, 127 Ind. 181 (26 N. E. 770); *Florence Gas Co. v. Hanby*, 13 South. (Ala.) 343; *Weaver v. Sells*, 10 Kan. 609; *Steamer Gazelle v. Lake*, 1 Or. 120; *Phillips v. Mason*, 7 Heisk. 61; *Handel v. Elliott*, 60 Tex. 145; *In re Hope Mining Co.*, 1 Sawy. 710; Wade, Retroactive Law, § 173; Jones, Liens, § 1558.

But it seems to us that a fair distinction can be drawn between those rights of lien which are conceded to be purely remedies, such as attachments, judgment liens and the like, and mechanics' liens, in this: that parties do not make ordinary contracts with a view to the particular means provided for their enforcement, whereas, at common law, one performing labor upon a chattel has an implied lien upon it for the value of his services so long as it remains in his possession.   It would not be a very far stretch of the common law lien to extend it over logs, which are chattels, and it is not impossible that such a lien might now exist were it not that in the nature of the thing, logs are of such a character that possession cannot be retained of them and the business of logging progress.   But in a country like ours, where the logging business is a principal industry, it is the interest of the public that that business be fostered, as it is, also, that the men who perform labor in that business have some secure means of collecting their wages.   Therefore the statutes have expressly extended the laborer's right of lien at the common law to this class of personal property also, and given practically the same remedies for its enforcement, *mutatis mutandis*,

as the builder of a carriage, the mender of a watch, or any other artisan, has in reference to the thing which he creates or repairs.

Since these laws have been in force we have no doubt that the credit which has been accorded to employers by their men has been very largely based upon the security which the latter have counted upon through the existence of their supposed right to be paid out of the specific things which they have created. When the work is done through contractors, so that the men have no contract relation with the owner of the chattel, the case is somewhat different, and a new principle is introduced, which is exemplified in *Streubel v. Milwaukee, etc., R. R. Co.*, 12 Wis. 74, where laborers upon railroad construction were given the right to sue the railroad company for their wages when the contractors who employed them failed to pay them.

The same principle, as we understand the case, was upheld in *Steamship Co. v. Joliffe*, 2 Wall. 450. In both the cases mentioned it was held that the repeal of the statute did not destroy the *quasi* contract under which the right of action accrued. · Upon the authority of the latter case, in the main, *In re Hope Mining Co., supra*, was decided, sustaining a laborer's lien upon mining works after the substitution of a new act which repealed all former laws on the subject. *Handel v. Elliott, supra*, sustains the view we have taken, and cites the principal cases on the subject.

We hold, therefore, that the right to a lien was a part of the laborer's contract, and was not affected by the substitute law of 1893.

2. The complaint alleged the appellant to be a corporation organized and existing under the laws of this state, and its only answer was a general denial. A defendant corporation cannot appear generally in an action and afterwards complain that there was no affirmative proof of its corporate existence.

3. The law required that the lien notice should be filed in the county where the logs were cut, and this was a matter that should not have been left to inference and presumption upon the trial. There was no reason in the world why some one of the many witnesses examined should not have stated the blunt fact that these logs were cut in Mason county. But this omission, which was doubtless a mere inadvertence, owing to the fact that a new decree must be entered, will not be permitted to defeat the action.

4. Although some of the lienors, who were unlettered men, stated that they were employed by "the Malaneys," or "Malaney Brothers," it satisfactorily appeared that the real employer was the Washington Improvement Company, whose agents to manage the logging business the Malaneys were.

5. Objection is made that the county auditor was not authorized to administer oaths until 1893, and that therefore the verification of all these liens, which was made before him, was void. County auditors were invested with the power to administer oaths by § 2717, Code 1881, and this law remained in force under the constitution, although the auditor was not mentioned as a county officer in the article on county organization. All laws were continued in force and all officers were continued in office under §§ 2 and 6 of the schedule (Const., art. 27). The salary act of 1890 (Laws, p. 302) did not create the office of county auditor, but merely fixed the salary of an existing officer. The act of 1893 (p. 282, § 6) expressly recognized and amended § 2717 of the Code of 1881.

6. The original notices of lien were in numerous instances admitted by the court to show compliance with the statute in the matter of filing. Each of these notices was endorsed thus:

"I certify that the within instrument was filed for record in the auditor's office of Mason county, by [here fol-

lows the name of the party filing, the date and hour], and
that it is recorded in volume — of lien records of said
county, on page [volume and page given].
    [Auditor's seal.]               J. W. DAY,
             *Auditor Mason County, Wash.*"

    This presents a different case from any heretofore con-
sidered by this court. The statement of the certificate is
as full as it could be made, and the question is whether,
under any circumstances, such a certificate is to be taken
as proving the fact of filing and record. Appellant's con-
tention is that only a certified copy can be used for such a
purpose; but the statute cited does not bear out the posi-
tion. Gen. Stat., § 209, makes certified copies of records
*prima facie* evidence, but it does not declare that nothing
else shall be evidence. An original deed ought, in reason,
to be as competent as a copy, and we have yet to ascertain
that an original has been rejected. The object sought to
be accomplished by the respondents in this case was two-
fold: *First*, That they had verified a proper claim or notice
of lien; *secondly*, that it had been filed for record in the
proper office. The original shows the contents of the in-
strument and its verification even better than a copy; and
it is only left to be determined whether the certificate of
the auditor that this particular instrument has been filed
for record and recorded is equivalent to his certificate that a
writing which he prefixes is a true copy of an instrument of
record in a certain volume in his office. Appellant objects
that the auditor cannot certify to his version of the contents
of a record, but must certify a copy of the record itself.
*People v. Lee*, 112 Ill. 113. But in certifying a copy, if
he includes therewith the fact of filing, the name of the
person presenting the instrument, the date and the book
and page of record, he is just so far stating facts which
are not a part of the record, strictly, but are gathered
from memoranda noted in the book, and from the book

itself.   These facts, it is conceded, may be certified by the auditor in connection with his copy, and we are unable to see why they may not be equally as well certified upon the original instrument as upon the copy.   In *Sylvester v. Coe Q. M. Co.*, 80 Cal. 510 (22 Pac. 217), it was held that the mere endorsement upon a lien notice was *prima facie* evidence of the filing and date of recording.   *Jewett v. Darlington*, 1 Wash. T. 601, held the contrary.   But here we have a formal certificate under the hand and *seal* of the officer, and if the fact of record can be proven by the certificate in one case, there is no good reason why it cannot be in another.   It is the seal which makes the verity.

7.  Each of the lienors produced a time check containing a statement of his account with the Washington Improvement Company, delivered to him by that company, and appellant objects to their competency as against it, on the ground that the admission thereby made was hearsay. These checks were good as *prima facie* evidence of the amount due, as against the company which made them, and for the purpose of foreclosing a lien they must be taken to the same extent against the appellant.

8.  Each plaintiff demanded that a reasonable attorney's fee be allowed him, but alleged no particular sum to be reasonable.   Proof was taken by the testimony of attorneys as to what would be a proper fee in each case, and the court allowed twenty dollars.   Under the circumstances we do not think the allowance excessive.

9.  The decree of foreclosure was framed so as not to respond to the pleadings, proofs or findings.   Each lienor showed, and the findings adjudged, that he had assisted in producing certain logs, of which the marks and quantity in feet were given.   But the decree did not set out the logs upon which the several recoveries could be had, but merely made reference to the logs described in the lien notices. Under such a direction the officer could not proceed with

any degree of intelligence to perform his duty. This would be especially the case when, as here, the writ was to be directed to the sheriff of a county other than that in which the decree was entered.

10. While the conclusions of the court below as to the foreclosure are sustained, when proof shall have been made of the county where the logs were cut, we cannot uphold the judgment rendered against the appellant. The law under which these liens were filed gave a right of action to one holding a logger's lien against a third person who should injure, impair, destroy or render difficult, uncertain or impossible of identification the logs to which the lien pertained, for his damages to the amount secured by the lien. Gen. Stat., § 1694. But that right was maintainable only in an action separate from the foreclosure suit.

The court below, however, apparently adopted the view that, as the act of 1893 changed the mode of procedure so that these damages could be recovered in the foreclosure action (Laws, p. 434, § 20), it was proper, upon proof of the damage, to include it in the decree as an alternative judgment, in case the logs were not forthcoming. This construction might be proper were the circumstances different, viz., if there were a case of injury, destruction or difficulty of identification. But the new law introduces a new ground of damage, viz., "eloignment," and it was to the charge of eloignment alone that there was any testimony in the case against appellant. To "eloign" is to take away beyond the jurisdiction, or to conceal, so that under the new law it is possible that the construction would be that the mere removal of logs under lien from the county would cause the right of action for damages to accrue, since the apparent contemplation of § 12 (Laws 1893, p. 432) is that the sheriff of the county where the foreclosure suit is brought shall take possession for the lienors. But under the proofs adduced, whatever was done

by appellant with these logs was done before the new law even passed, and when only injury, destruction or rendering difficult of identification would make it liable in damages.    Of course eloignment, in the sense of concealing, would have satisfied the old law; but here the proof went no further than to show that some logs were towed away from Shelton under consignment to appellant, and that some logs were seen in appellant's boom at Port Blakely, in December, 1892; so that the eloignment, if any, occurred when there was no statute making that alone a ground of action.    It is needless to say that the new statute could not create a cause of action based on an eloignment occurring before its passage.

Still other valid objections to the decree against appellant were that the complaint stated no facts showing any interference with the logs by appellant, all the proofs against it having been admitted over objection on that ground, and without any offer to amend.    Again, there was no proof of the value of the logs.    Although the statute gave to each lienor a right of action for his damages, the total damage against one who should defeat the lien by removing, concealing or destroying the logs, could not, in any case, exceed the value of the logs liened; for it would only be to the extent of the value that damage could accrue.

The decree will be reversed, and the cause remanded with directions to the court below to receive proof that the logs were cut in Mason county, and thereupon enter a new decree of foreclosure against such logs as may still be found, whether in Mason county or not.

DUNBAR, C. J., and HOYT, SCOTT and ANDERS, JJ., concur.