[No. 21591. Department One. July 3, 1929.]

NEMAH RIVER TOWBOAT COMPANY, *Respondent*, v. J. M. BREWSTER *et al.*, *Appellants.*[1]

[1]Reported in 278 Pac. 694; 279 Pac. 1107.

*Nelson R. Anderson,* for appellants.

*John I. O'Phelan,* for respondent.

TOLMAN, J.—This action was originally brought by parties not now before this court, seeking recovery on their demands against the appellants here. Respondent, by answer and cross-complaint, set up a cause of action against the appellants, alleging that appellant Brewster was under contract with the state to build a certain state road; that the casualty company was surety on his bond; that respondent, at the instance of Brewster, had performed certain work and labor in towing gravel and lumber to be used in the performance of the contract; and that respondent had filed its claim therefor in the manner provided by law.

The issues thus raised were tried to the court, resulting in findings to the effect that respondent was a common carrier and, as such, performed the services as alleged; that the last service was performed May 31, 1926; that the amount owing therefor was $340, no part of which had been paid; and

"That on or about the 28th day of July, 1926, the defendant and cross-complainant, Nemah River Towboat Company, in order to secure payment of its claim for said service and labor, did cause to be prepared and filed in the manner provided by law, a notice in writing, its claim against the fund in the possession of the state highway [committee] of the state of Washington and also against the bond given by said J. M. Brewster, for such work."

An attorney's fee of $100 was allowed, and judgment was rendered against the reserve fund and both the principal and the surety accordingly; from which judgment this appeal is prosecuted.

The principal and most far-reaching contention advanced here is to the effect that the trial court erred

674

in holding that a common carrier is entitled to a lien under the public improvement statute, Rem. Comp. Stat., § 1159. In this respect, appellants rely particularly upon the case of *American Surety Co. of New York v. Lawrenceville Cement Co.*, 110 Fed. 717, and contend that, as respondent is a common carrier, and as its claim is for transportation charges only, that claim is not protected by the provisions of Rem. Comp. Stat., § 1159, *et seq.*, for the reasons, first, that the claim is not for labor or materials, and, second, that the carrier has a well-recognized lien for freight charges at common law aside from the statute. To the same general effect, are the cases of *United States v. Hyatt*, 92 Fed. 442, and *Mandel v. United States*, 4 Fed. (2d) 629.

While it is true that the foregoing cases hold generally that transportation charges are not within the protection of the Federal Improvement Act (28 U. S. Stat. at L. 278 and amendments) for the reasons stated, still it will be observed that the last two mentioned cases have to do with freight charges of railroad companies, and that the first case contains exceptions and qualifications. As opposed to the foregoing cases, we find *United States v. Columbus Circle Construction Corporation*, 284 Fed. 155, which holds directly opposite and criticizes Judge Putnam's decision in the *American Surety Co.* case, *supra*. However, we do not find it necessary to discuss the relative merits of these cases.

In the case at bar, the claim was for towage charges. A rather exhaustive search discloses four cases, aside from the *American Surety Co.* case, *supra*, which have to do directly with towage claims. These cases are *Title Guaranty & Trust Co. v. Puget Sound Engine Works*, 163 Fed. 168; *Title Guaranty & Trust Co. v. Crane Co.*, 219 U. S. 24; *United States Fidelity & Guar-*

*anty Co. v. United States,* 189 Fed. 339; *Taylor v. Connett,* 277 Fed. 945.

The court, in the *American Surety Co.* case, *supra,* said:

"In using the expression which we have quoted from the statute and the bond, there can be no question that congress had somewhat in mind statutes in various states giving liens on buildings and other property, real and personal, for labor and material. Nevertheless, this statute does not have the same aspect as the ordinary lien statutes referred to, and therefore the latter can afford only very general assistance with reference to the construction of the former. The ordinary lien statutes have been justly and strictly held to cover only what has added to the value of the property against which the lien is asserted, and therefore they are ordinarily administered to protect only what is actually incorporated into its substance. The underlying equity of these statutes requires them to be so limited in their application. Even this underlying equity is not applied with absolute strictness; as, for example, with reference to a bill of lumber sold to one erecting a building, no distinction is made between those portions of it which are actually incorporated into the walls and those portions used in temporary carpenters' stagings necessary to aid in construction. Such statutes commonly use expressions of this character: 'Whoever performs labor or furnishes materials in erecting, altering, or repairing a house, building, or appurtenances,'—a form which has direct reference only to the labor or materials and the erection in which they are used; while in the statute under discussion the expression is broader, namely, 'in the prosecution of the work.' The underlying equity of the lien statutes relates to a direct addition to the substance of the subject-matter of the building, or other thing, to which the lien attaches, while the statute in question concerns every approximate relation of the contractor to that which he has contracted to do. Plainly, the act of congress and the bond in the case at bar are susceptible of a more liberal construction than the lien statutes

referred to, and they should receive it. In the one case, as in the other, the dealings of the person who claims the statutory security must approximate the work, and in the one case as well as in the other there must be a certain margin within which there will be difficulties in discriminating between what is and what is not protected. Nevertheless, we are not concluded by the decisions with reference to the ordinary state statutory liens. We can apply them only in a general way, and we are not so restricted by them as to require a construction inconsistent with the remedial purposes of the statute now in issue.

"Also we think the master was too strict with reference to some minor claims for transportation. Clearly, he was right in his illustrative suggestion which led up to his conclusion with reference to claims for trucking and water carriage. As stated by him, the carrier ordinarily has a lien for his freight, which is a sufficient protection to him. Therefore, in cases of transportation by a carrier from distant points, or, indeed, from another port than the port at which the contractor's work is being done, the carrier would not ordinarily be protected by the statutory bond, for two reasons: First, transportation for considerable distances in the regular course, by the ordinary lines of either steam, sail, or rail, cannot easily be brought within the words of the statute, 'supplying labor or materials;' and, second, inasmuch as carriage of that character, especially under an ordinary bill of lading, or its equivalent, creates a well-recognized lien for freight, the equitable rule would apply that a carrier, under such circumstances, cannot give up his cargo, and enforce his claim against a mere surety, after he has so placed himself that the surety cannot be subrogated to the security which the law gave. The first objection, however, does not necessarily apply to truckmen who are moving materials from a place of landing to the exact locality of the work under contract, although the distance may be somewhat considerable, nor to water-borne transportation carried on by the servants of the contractor, or for short distances without the aid of steam or a fully-equipped vessel. The

second objection, moreover, must not be carried to an extreme, otherwise it would defeat the practical operation of the statute. Every person selling materials for cash holds a lien for the purchase money until he voluntarily waives it by delivery; and every person engaged in transportation, who is not the mere servant of the owner of the merchandise transported, holds a carrier's lien, even though the carriage is of miscellaneous parcels, over short distances in the immediate locality, and at frequent, irregular intervals. Nevertheless, with reference to each, such liens are not ordinarily insisted on, and it would be an unreasonable construction of the statute to hold that it intended to interfere with the convenience of minor dealings in such methods as the usual practices establish. Therefore, as already stated with reference to either class, to insist on the fact that the lien is waived, and short credit given would defeat the beneficial purpose of the statute, and the practical ends which it is intended to accomplish.

"As to the claims of M. H. Dodge, George L. Cleaves, William D. Post, and Alexander Johnson, for water-borne transportation of materials used in the work, such as coal and lumber to the island where the work was done, and which were rejected by the master, the record does not disclose enough to enable the court to apply the rules which it has stated with reference to that particular subject-matter, or to determine on which side of the line the claims fall; and therefore the master's report must stand, so far as they are concerned."

Clearly, from the last-quoted case, it is not a question of whether or not the creditor is a common carrier, but rather the nature of the particular conditions relating to the service from which the claim arises.

In this case, the court found that:

"The Nemah River Towboat Company performed certain work and labor in towing of gravel and lumber for said J. M. Brewster, the gravel and lumber to be used in carrying on the work contracted to be done by said J. M. Brewster . . ."

In the foregoing case, the court, while adhering to the general rule that transportation charges are not, in general, proper charges against the surety, still makes exceptions, or, rather, qualifications, or limits the rule, so that claims for water transportation carried on over short distances at frequent, or irregular intervals, where the practice may not be to pay for such transportation upon delivery of the materials, or to assert the lienable right, are properly charged to the surety.

In the case of *Title Guaranty & Trust Co. v. Crane Co., supra,* the supreme court, in indorsing and approving the foregoing, recently said:

"Next it is objected that certain claimants are not entitled to the benefit of the bond, either because they had a lien or because the service was too remote. Of the former class are claims for cartage and towage to the spot where the work was going on. We agree with Judge Putnam in *American Surety Company of New York v. Lawrenceville Cement Co.,* 110 Fed. Rep. 717, that in these small matters the objection, if carried to an extreme, would defeat the purpose of the statute that such liens ordinarily are not insisted upon, and that it would be unreasonable to let the statute 'interfere with the convenience of minor dealings in such methods as the usual practices establish.' Of the other class are the claims for patterns furnished to the molding department of the Puget Sound Engine Works. As was said by the judge below, those who furnish the patterns have as fair a claim to be protected as those who erect the scaffolding upon which the carpenters stand in doing their work upon the ship."

In the case of *State of Oregon v. Security Construction Co.,* 3 Fed. (2d) 274, the court held that a contractor's bond executed under the Oregon public improvement statute, which is similar to the Washington statute, included items for the cost of loading, transporting, and unloading equipment used on the work under public contract, as well as the cost of returning the same.

We feel that the claim of the respondent comes within the provisions of Rem. Comp. Stat., § 1159 *et seq.*, and that it is properly chargeable against the bond of the contractor.

■ Some question is raised as to the sufficiency of the findings with reference to the material towed having been delivered on the job or used in the work, and also as to the sufficiency of the findings relating to the contents of the notice, but we pass these except to hold that they are sufficient in an action on the bond only, because it clearly appears from the record before us that respondent's claim was filed on July 28, 1926, and that no action was brought to enforce or foreclose the lien within four months thereafter, as required by § 3 of ch. 166, Laws of 1921, p. 658 [Rem. Comp. Stat., § 10322]. True, the original complaint was filed October 21, 1926, within four months from the filing of the notice, but that was not respondent's complaint, and it did not, in any way, seek the enforcement of respondent's claim. Respondent first disclosed the particulars of its claim and sought relief by its answer and cross-complaint, which was not verified until January 19, 1927, and which was filed some time thereafter. The statute provides:

"The liens provided for in this chapter shall be enforced by a civil action in the superior court of the county wherein the lien was filed, and shall be governed by the laws regulating the proceedings in civil actions touching the mode and manner of trial, and the proceedings and laws to secure property so as to hold it for the satisfaction of any lien that be against it. In the event the lien claimant fails to bring an action within the time provided for and limited herein, the said reserve fund shall be discharged from the lien of said claimant and the moneys so held shall be forthwith paid to the contractor: Provided, however, That the limitation of four (4) months provided for herein shall not be construed as a limitation upon the right to

sue the contractor or his surety where no right of fore-
closure against said fund is sought.''

We must therefore hold that the right against the
fund has lapsed; that no foreclosure can now be had,
and therefore the allowance of an attorney's fee was
improper.

■ Treated as an ordinary civil action against the
contractor and the surety, the judgment for $340, inter-
est and costs, against them is affirmed, but that part of
the judgment impressing a lien on the fund and allow-
ing an attorney's fee is reversed.

HOLCOMB, FULLERTON, FRENCH, and BEALS, JJ., con-
cur.

## ON REHEARING.

[Department One.   August 27, 1929.]

PER CURIAM.—Respondent, in its petition for rehear-
ing, has called our attention to Rem. Comp. Stat.,
§ 1161, which gives a right of action on a contractor's
bond and provides that a claimant successfully suing
on a bond shall recover a reasonable attorney's fee to
be allowed by the court in addition to all other costs.

■ Since, then, contrary to what seemed to be ex-
plicit admissions on the part of respondent originally,
the right to an attorney's fee does not depend upon the
right to foreclose a lien on the fund, but is recoverable
in a straight law action on the bond, that part of the
original opinion disallowing the attorney's fee must be
set aside. The judgment of this court is therefore
hereby modified so that the judgment as entered be-
low is affirmed in all things, except as it impresses a
lien on the fund and that judgment is reversed only as
to such lien.

Since appellants recover no more favorable judg-
ment by reason of this appeal, respondent will recover
its costs in this court.