[No. 6501–4–III.   Division Three.   November 21, 1985.]

PACIFIC GAMBLE ROBINSON CO., *Appellant,* v.
CHEF–REDDY FOODS CORPORATION,
ET AL, *Respondents.*

*Steven H. Sackmann,* for appellant.

*Francois X. Forgette* and *Raekes, Rettig, Osborne, Forgette & O'Donnell,* for respondent Chef–Reddy Foods.

*Alphus R. Christensen* and *Randall & Danskin,* for respondent Lamb–Weston.

*Edward H. McKinlay* and *McKinlay & Hultgrenn,* for respondent Seattle–First.

McINTURFF, J.—Pacific Gamble Robinson Co., d/b/a Pacific Fruit and Produce Co. (Pacific), commenced this action seeking damages for eloignment,[1] conversion and confusion of crops upon which it had liens. The sole issue is whether Pacific may assert such claims where its seed, fertilizer and pesticide liens have expired. We hold it cannot.

The basic facts are not in dispute. On April 6, 1981, Seattle–First National Bank (Sea–First) assumed a security interest in Mr. and Mrs. Marvin Solberg's 1981 potato crops growing or to be grown on farm units located in Franklin County, Washington. The security interest was perfected by the proper filing of a financing statement on April 8, 1981.

During the 1981 crop year Pacific supplied approximately $98,484.56 worth of fertilizer, potato seed and chemicals to Mr. and Mrs. Solberg. In conjunction with the intermittent sale of these supplies, Pacific filed fertilizer and seed liens with the Franklin County Auditor as follows:

| DATE | TYPE OF LIEN | AMOUNT OF LIEN |
|---|---|---|
| May 28, 1981 | Fertilizer | $17,924.84 |
| May 28, 1981 | Seed | 27,747.60 |
| November 20, 1981 | Seed | 228.00 |
| November 20, 1981 | Fertilizer | 52,584.12 |

On April 20, 1981, Chef–Reddy Foods Corporation contracted with the Solbergs to purchase some of the 1981 potato production. The Solbergs warranted that only Sea–First held a security interest in the crop. The potatoes were harvested by November 13, 1981. Chef–Reddy issued checks totaling $55,357.85, payable jointly to the Solbergs and Sea–First.

About the same time, Skone & Connors Produce, Inc., and Western Cold Storage Co. took delivery of potatoes for which they paid the Solbergs and Sea–First $3,271.80 and $2,531.92 respectively. The remaining potatoes were placed

---

[1] "To 'eloign' is to take away beyond the jurisdiction, or to conceal . . ." *Garneau v. Port Blakely Mill Co.*, 8 Wash. 467, 475, 36 P. 463 (1894) (timber statute).

in storage. On February 18, 1982, Lamb–Weston, Inc., contracted with the Solbergs to purchase the stored potatoes. Once advised Sea–First held a lien on the potatoes, Lamb–Weston issued joint checks to the Solbergs and Sea–First totaling $70,217.36.

On November 9, 1982, the Solbergs filed a petition for reorganization under chapter 11 of the bankruptcy code. Pacific eventually commenced this action seeking damages for eloignment, conversion and confusion of the crop by the processor/packer defendants. It also claimed against Sea–First, alleging the bank received payments inconsistent with its relative priority.

Pacific alleges it may assert claims for eloignment, conversion and confusion of goods where its seed, fertilizer and pesticide liens have expired. It contends conversions occurred within the 8–month life of the liens and that this action is subject to the 3–year statute of limitation.

Basically, there are three types of liens: (1) common law, (2) equitable and (3) statutory. *See, e.g., In re Marriage of Miracle,* 101 Wn.2d 137, 675 P.2d 1229 (1984); *Algona v. Sharp,* 30 Wn. App. 837, 638 P.2d 627 (1982); *Murray v. Eisenberg,* 29 Wn. App. 42, 627 P.2d 146 (1981). Crop liens are not a common law or equitable lien; they are a statutory creation. A fertilizer lien, created by RCW 60.22.010, attaches upon "all the crops on which the fertilizer . . . [is] used . . ." A seed lien applies to "crops grown" from the seed furnished. RCW 60.12.180. Although these liens, when properly perfected, may follow the crop upon its delivery or sale to a third person, they would not normally attach but for the statutory provision. *United Cigar Stores Co. of Am. v. Florence Shop,* 171 Wash. 267, 272, 17 P.2d 871 (1933).

All statutory liens are stricti juris: one claiming the benefit of the lien must show he has complied strictly with the provisions of the law that created it. *Dean v. McFarland,* 81 Wn.2d 215, 219–20, 500 P.2d 1244, 74 A.L.R.3d 378 (1972); *Northlake Concrete Prods., Inc. v. Wylie,* 34 Wn. App. 810, 813, 663 P.2d 1380 (1983). One claiming a lien

has the burden of proving the right to it. *Westinghouse Elec. Supply Co. v. Hawthorne*, 21 Wn.2d 74, 77, 150 P.2d 55 (1944); *Northlake*, at 813.

Here, fertilizer[2] and seed liens are involved. These statutory liens must be enforced within certain time frames. Actions on fertilizer liens "shall be brought within twelve calendar months after filing the claim for lien . . ." RCW 60.22.030. With respect to seed liens, RCW 60.12.080 provides:

> No lien shall bind a crop for a longer period than eight calendar months after the claim was filed, unless an action is commenced within that time to enforce it: *Provided*, That if the claim of lien is upon a crop to be grown and harvested in the following calendar year, after the work of preparing the ground or planting or sowing the crop is done, the lien shall bind the crop for a period of twelve calendar months after the claim was filed, if an action is commenced within that time to enforce it: *Provided further*, That a lien for seed shall not expire until six months after the crop from said seed has been harvested or until after two years from filing, whichever is the shorter time . . .

■■ Although no reported case has addressed the effect of one's failure to comply with the fertilizer lien statute, the failure to timely commence an action to enforce a seed lien is fatal. Under the seed lien statute, no lien shall exist and no action to enforce such shall be maintained unless the complaint was filed or summons served within the prescribed period. *See J.R. Simplot Co. v. Vogt*, 93 Wn.2d 122, 126, 605 P.2d 1267 (1980). There, the court determined RCW 60.12.080 "to be a statute of limitation on the duration of the lien rather than a limit on the existence

---

[2]It is not clear under which statutory section Pacific alleges a fertilizer lien. RCW 60.14.010 provides for an agricultural dusting or spraying lien for those who furnish materials "for promoting the growth of such crops. . . ." RCW 60.22.010 provides for a "fertilizer", pesticide and weed killer lien. The two chapters are different in that the dusting and spraying lien requires an action be commenced within 8 months after the filing of the lien. The fertilizer lien allows claims to be brought up to 12 months after the filing of that lien. Since neither statute will afford Pacific an enforceable lien, the longer statutory time limit is applied.

of the lien." Thus, a seed lien and the claim to enforce it expire if not brought within the stated period. The purpose of the limitation of actions statute is to require the claimant to bring suit while the evidence upon which the lien rests is sufficiently fresh to allow any party to contest it if the facts fail to warrant the lien. *Interior Warehouse Co. v. Hays*, 91 Wash. 507, 510, 158 P. 99 (1916) (farm laborer crop lien). "The claimant must accord this opportunity within the time limited or lose his lien." *Hays*, at 510 (quoting *Davis v. Bartz*, 65 Wash. 395, 397, 118 P. 334 (1911) (mechanic's lien)).

Several other cases, construing a variety of lien statutes with similar statutory time limits, conclude one's failure to timely commence the action is fatal to the claim. *Curtis Lumber Co. v. Sortor*, 83 Wn.2d 764, 771, 522 P.2d 822 (1974) (mechanic's lien); *United Cigar Stores Co. of Am.*, at 272 (landlord lien); *Nemah River Towboat Co. v. Brewster*, 152 Wash. 672, 678–80, 278 P. 694, 279 P. 1107 (1929) (contractor bond); *McDermott v. Tolt Land Co.*, 101 Wash. 114, 117, 172 P. 207 (1918) (log lien); *Hays*, at 509–10 (crop lien); *City Sash & Door Co. v. Bunn*, 90 Wash. 669, 674, 156 P. 854 (1916) (mechanic's lien) (*overruled in part in Curtis Lumber Co. v. Sortor, supra*). *See also* M. Keyes, *Construction Lien Practice & Procedure Manual* 14–15 (1976 & Supp. 1985). Since the duration of the fertilizer lien also is limited by statute, this lien also expired unless action was commenced within the statutory 12–month period.

Here, Pacific failed to comply with the statutory period established in the seed and fertilizer lien statutes. First, with respect to the seed lien, harvest occurred approximately November 13, 1981. The seed liens were valid for 6 months after harvest and expired May 13, 1982. Pacific commenced this suit October 18, 1983. Hence, by virtue of the unambiguous terms of the statute, the lien did not exist when the action was brought. Obviously, a successful action cannot be maintained to enforce a legally nonexistent lien.

Second, as to the fertilizer liens, Pacific had to commence an action within 12 months of recording. RCW 60.22.030.

That is, Pacific was required to bring an action by May 28, 1982, on the first fertilizer lien, and by November 20, 1982, on the other. That no action appeared of record within those respective periods constitutes a fatal omission by Pacific to preserve its claim under the statute. Consequently, Pacific does not have enforceable fertilizer liens.[3]

█ Without valid liens, Pacific has no property interest in the proceeds and therefore may not press claims for eloignment, confusion of goods or conversion. With respect to the eloignment claims, RCW 60.12.160 provides:

> Any person who shall eloign, injure, or destroy, or who shall render difficult, uncertain or impossible of identification, any crop or crops *upon which there is a lien,* as provided for in this chapter, without the express consent of the lien holder, shall be liable to the lien holder for damages, to the amount secured by his lien . . .

(Italics ours.) An eloignment requires an existing seed lien because damages are based upon the amount secured by the lien. There can be no eloignment except of crops "upon which there is a lien." RCW 60.12.160; *see also Akers v. Lord,* 67 Wash. 179, 182, 121 P. 51 (1912) (identical language used in logs and logging liens and eloignment statute). *Tom v. Sayward,* 5 Wash. 383, 384, 31 P. 976 (1892), which concerned the timber and log statute, identified the requirements for an eloignment claim:

> In order that the respondent might recover any damages at all, it was necessary for him both *to aver* in his com-

---

[3]In addition to the fact of expired liens, Pacific's unarticulated assumption is the validity of the liens initially. But because statutory liens are strictly construed, three of the four crop liens were invalid.

A. *Fertilizer liens*: RCW 60.22.010(2) requires the lienholder to serve the crop purchaser a certified copy of the lien so that the lien will attach to the proceeds of the crop sale. Pacific's failure to file the notice of the fertilizer lien is fatal to its claim on the crop proceeds.

B. *Seed liens*: RCW 60.12.190 requires the seed lien be filed within 60 days after delivery of the seed to the owner. The filing of the November 20 lien, on crops harvested November 13, is ineffective because it occurred more than 60 days after *delivery* of the seed to the owner. Thus, only one seed lien, filed May 28, 1981, was valid for the 8–month period. It expired 6 months after harvest: May 13, 1982.

plaint and *to prove* before the court that *he had a valid lien* which was destroyed by the defendant. Before the court could award him damages, it was first necessary for him to ascertain whether he had a valid and subsisting lien, or, in other words, to establish his lien.

(Italics ours.)

Pacific did not have a seed lien upon which an eloignment claim could be based. Moreover, no statutory right existed for an eloignment claim based upon a fertilizer lien. Thus, the court properly denied the eloignment claims.[4]

■ An action for conversion may be maintained by persons having the immediate right to possession of the article converted. *Sussman v. Mentzer,* 193 Wash. 517, 520, 76 P.2d 595 (1938); *Smith v. Dahlquist,* 176 Wash. 84, 89, 28 P.2d 262 (1934); *Firestone Tire & Rubber Co. v. Pacific Transfer Co.,* 120 Wash. 665, 668, 208 P. 55, 26 A.L.R. 217 (1922); *Malchow v. Boise Cascade Corp.,* 20 Wn. App. 258, 259, 578 P.2d 1337 (1978). It is not necessary that one show absolute and unqualified title, but some property interest must be shown. *Burnett v. Edw. J. Dunnigan, Inc.,* 165 Wash. 164, 170, 4 P.2d 829 (1931); *Messenger v. Murphy,*

---

[4]Pacific cites a number of early Washington cases involving timber liens as authority for the proposition that an action for eloignment may be brought without the necessity of a judicial foreclosure. *Tom v. Sayward, supra* at 384. *See Adams v. Harvey,* 129 Wash. 483, 225 P. 407, *adhered to on rehearing,* 131 Wash. 701, 230 P. 436 (1924); *Chapin v. Kenoyer,* 12 Wash. 536, 41 P. 916 (1895); *Peterson v. Sayward,* 9 Wash. 503, 37 P. 657 (1894); *Singer v. Wallace,* 8 Wash. 576, 36 P. 466 (1894). But these cases stand for a different proposition. In *Peterson,* the plaintiffs first brought an action to foreclose their liens. In *Singer,* suit was commenced to foreclose certain liens and a judgment of foreclosure was entered about 8 months after the lien claims were filed. Since the defense of expiration was not raised against the liens, it is reasonable to infer the *Singer* foreclosure action was filed within the period of the lien's existence. In *Adams,* the action was originally brought to foreclose a lien and for eloignment.

In *Chapin,* the plaintiff alleged he was entitled to a lien and that he had filed notice of claim of lien. This case does not provide any basis upon which one could conclude that the action was brought without a lien. Finally, in *Tom,* the court notes that "no foreclosure of the lien was sought . . ." and that the claim was for damages only. Without a subsisting lien, the claimant lost a right to eloignment. Thus, these cases support the conclusion that a lien must exist for an eloignment action to exist; the other cases do not support the contention that an eloignment claim may be brought after the lien expires.

33 Wash. 353, 356, 74 P. 480 (1903). In this case, where Pacific does not have a lien on the property, an action for conversion is not maintainable. Pacific has neither a property interest in, nor a right to possess, the chattels alleged to have been converted. Thus, the court properly denied this claim.

Lastly, the doctrine of confusion of goods deals with the method by which one may gain title to personal property because it has been indistinguishably or inseparably intermingled with his own. *Johnson v. Covey*, 1 Utah 2d 180, 264 P.2d 283, 39 A.L.R.2d 553 (1953); Annot., *Confusion of Goods by Accident, Mistake, or Act of a Third Person*, 39 A.L.R.2d 555 (1955 & Supp. 1985); 15A C.J.S. *Confusion of Goods* § 3 (1967 & Supp. 1985); 8A Words and Phrases, *Confusion of Goods* 145–46 (1951 & Supp. 1985). The act of wrongfully mixing the property of one person with that of another to the extent the property cannot be identified is an act of conversion. *Peltola v. Western Workman's Pub'g Soc'y*, 113 Wash. 283, 289, 193 P. 691, 20 A.L.R. 374 (1920). Accordingly, because Pacific does not have a property interest in the crop, its claim for confusion of goods, as its conversion claim discussed above, was properly denied by the court.

The judgment of the Superior Court is affirmed.

GREEN, C.J., and THOMPSON, J., concur.

Review denied by Supreme Court January 24, 1986.