[No. 11970-0-III.   Division Three.   June 22, 1993.]

CLAYTON MICHEL, ET AL, *Respondents,* v. DAVID MELGREN,
ET AL, *Defendants,* KENNY ROOSE, ET AL,
*Appellants.*

*Frank L. Kurtz* and *Kurtz, Hurley & Lara,* for appellants.

*Peter A. Witherspoon, Susan M. Gasch,* and *Workland, Witherspoon & Riherd; Patrick R. Acres,* for respondents.

THOMPSON, A.C.J. — Kenneth A. and Corrine Roos[1] appeal a summary judgment in favor of Clayton Michel and Henry and Lillian Solbrack. Michel and Solbrack claimed landlords' crop liens on hay which Rooses purchased from their tenants. The judgment entered was for the purchase price already paid by Rooses, together with interest, costs and attorney fees. Rooses contend the claim was time barred and there were disputed issues of material fact precluding summary judgment. We reverse and remand for trial.

The following facts are undisputed:

On March 1, 1985, Michel leased Farm Unit 89 in Adams County to Charlie Keith and David Melgren. That same date, Solbrack leased adjoining Farm Unit 90 to the same tenants. Both leases were for 5 crop years and called for lease payments in the amount of 20 percent of the crops grown, with a minimum rental of $75 per acre.

The tenants grew alfalfa hay on the leased property in 1987 and 1988. They defaulted in their payment of rent sometime in 1987. On April 15, 1988, Michel and Solbrack filed liens with the Department of Licensing pursuant to RCW 60.11.020 and RCW 60.11.040(4).[2] On July 19, 1988,

---

[1]Appellants' correct names are Kenneth A. and Corrine Roos.

[2]RCW 60.11.020(1) provides for a landlord's lien:

"A landlord whose lease or other agreement with the tenant provides for cash rental payment shall have a lien upon all crops grown upon the demised land in which the landlord has an interest for no more than one year's rent due or to become due within six months following harvest."

RCW 60.11.040(4) sets forth the filing requirements:

the tenants were notified of the landlords' election to terminate the leases.

On September 9, 1988, a crop lien foreclosure action was commenced by Michel and Solbrack against the tenants. An amended complaint was filed in December 1989, naming Rooses and other buyers as defendants. As to Rooses, the complaint alleged claims for conversion and eloignment.

Michel and Solbrack moved for summary judgment against Rooses. Although Michel and Solbrack leased different parcels, had separate leases, and individual lien rights, they were awarded one judgment for $15,878.78, together with interest thereon at 12 percent per annum, commencing November 9, 1988, and attorney fees in the amount of $2,341.[3] Rooses timely appealed.

In reviewing summary judgment orders, the appellate court engages in the same inquiry as the trial court. It determines if, after examining the record, there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). All facts are viewed in a light most favorable to the nonmoving party. *Wilson*, at 437.

## APPLICABLE STATUTE OF LIMITATION

First, we address Rooses' contention that the action against them was barred by the statute of limitation applicable to the foreclosure of a landlord's crop lien.

---

"Any landlord claiming a lien under this chapter for rent shall file a statement evidencing the lien with the department of licensing."

Both RCW 60.11.020 and RCW 60.11.040 have been amended since the liens at issue were filed. However, the amendments did not change or affect the provisions at issue.

[3]The attorney fee award was based on RCW 60.11.130 which provides:

"Judicial foreclosure or summary procedure as provided in RCW 60.11.060 shall be brought within twenty-four calendar months after filing the claim for lien, except in the case of a landlord lien which shall be twenty-four calendar months from the date of default on the lease, and upon expiration of such time, the claimed lien shall expire. *In a judicial foreclosure, the court shall allow reasonable attorneys' fees and disbursement for establishing a lien.*" (Italics ours.)

Rooses contend the claims were barred under RCW 60.11-.130 which requires foreclosure actions to be commenced within 24 months from the date of default on the lease. They admit it is impossible to state the exact date when the tenants went into default, but it occurred sometime during the summer of 1987 when the tenants sold the first cuttings of the 1987 hay. Since the action against them was not commenced until December 1989, Rooses contend the claim was time barred.

Michel and Solbrack contend the commencement of a crop lien foreclosure action tolls the running of the statute of limitation as to claims against purchasers of a liened crop. They rely, in part, on *J.R. Simplot Co. v. Vogt*, 93 Wn.2d 122, 605 P.2d 1267 (1980). According to Michel and Solbrack, Rooses were not necessary parties to the foreclosure action and cases cited by Rooses to the contrary involve mechanics' lien foreclosure actions. They argue their action as to Rooses is subject to a 3-year limitation period and was timely commenced. RCW 4.16.080; *Pacific Gamble Robinson Co. v. Chef-Reddy Foods Corp.*, 42 Wn. App. 195, 202, 710 P.2d 804 (1985), *review denied*, 105 Wn.2d 1008 (1986).

The claims of Michel and Solbrack against Rooses are based on conversion and eloignment.[4] Both actions are subject to a 3-year limitation period. RCW 4.16.080. Since it is undisputed that the lawsuit against Rooses was commenced in December 1989, and Rooses purchased the hay between March 9, 1988, and November 9, 1988, these actions were timely commenced.

▉ The limitation period for crop lien foreclosure actions is, however, of importance to this case. A conversion action requires plaintiffs to prove that they have some property interest in the goods allegedly converted. An eloignment action requires the existence of a valid crop lien. *See Sussman v. Mentzer*, 193 Wash. 517, 520, 76 P.2d 595 (1938)

---

[4]Eloignment is the removal or concealment of a chattel. *See Garneau v. Port Blakely Mill Co.*, 8 Wash. 467, 475, 36 P. 463 (1894); Black's Law Dictionary 521 (6th ed. 1990).

(conversion action); *Akers v. Lord,* 67 Wash. 179, 182, 121 P. 51 (1912) (eloignment action); *Pacific Gamble,* at 202 (conversion and eloignment action). Neither the conversion action nor the eloignment action could be maintained against Rooses unless Michel and Solbrack had liens on the hay at the time Rooses purchased it *and* the liens had not expired at the time the action against Rooses was commenced.

█ The statutory time period for beginning an action to foreclose a lien is a statute of limitation rather than an absolute limit on the lien's existence. Therefore, if a lien foreclosure is not barred by the statute of limitation at the commencement of the action, it does not become barred even though the full statutory period expires during the pendency of the action. *See J.R. Simplot,* at 126; *United Cigar Stores Co. of Am. v. Florence Shop,* 171 Wash. 267, 272, 17 P.2d 871 (1933); *Paris Am. Corp. v. McCausland,* 52 Wn. App. 434, 440, 759 P.2d 1210 (1988); *Pacific Gamble,* at 201-02. Since Michel and Solbrack commenced their foreclosure action against the tenants on August 25, 1988, within 24 months after they defaulted, not only was the foreclosure action timely, but if valid liens existed, they would not have expired at the time the conversion and eloignment actions were commenced.

CONVERSION AND ELOIGNMENT

We address next Rooses' contention there were disputed issues of fact material to whether Michel and Solbrack had a lien on the hay they purchased.

Rooses contend they purchased the hay to feed their dairy cows, were unaware of any crop lien filings, and would not have known how or where to find out about crop liens. On the other hand, Michel and Solbrack were aware of their tenants' default, knew the hay was being sold, and knowingly exposed buyers to a potential for double payment. Rooses argue that such action by the landlords created an issue of fact material to whether they expressly or impliedly waived their rights to claim crop liens. They cite 49 Am. Jur. 2d *Landlord and Tenant* § 693 (1970), *Banning v. Livesley,* 87 Wash. 580, 152 P. 4 (1915), and cases from other jurisdictions.

Michel and Solbrack contend their crop liens covered past due and future rent, together with all identifiable cash proceeds. RCW 60.11.030.[5] They argue that all parties to the leases understood the hay would be sold so rent could be paid and that fact does not constitute a waiver of their liens. They argue that *Banning* is distinguishable because the landlord in that case solicited a purchaser for the crops, and they did not.

One who would otherwise be liable for conversion or eloignment is not liable to the extent the other has effectively consented to the interference with his rights. Restatement (Second) of Torts § 252, at 482 (1965) (conversion); *Banning*, at 580-81 (a landlord, by consenting to the sale of hops and receiving part of the sale proceeds for rent, waives the statutory lien for the balance of rent and cannot hold the buyer liable for eloignment). Consent may be express or implied. 18 Am. Jur. 2d *Conversion* § 93, at 210 (1985). Although not directly applicable to the liens at issue, under the Uniform Commercial Code, a secured party relinquishes its security interest in collateral by consenting to a sale. Such consent prevents the secured party from recovering the collateral in the possession of a third party buyer, but does not extinguish the secured party's interest in the proceeds as against the debtor or competing creditors. RCW 62A.9-306(2);[6] *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 779 P.2d 697 (1989).

---

[5]Michel and Solbrack refer to cash proceeds of the sale to Rooses on several occasions. However, the proceeds were clearly not in Rooses' possession. Rooses paid the tenant for the hay on or shortly after each delivery.

[6]RCW 62A.9-306(2) states:

"Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

There is no provision under the crop lien statute similar to RCW 62A.9-306(2).

■ Waiver may be shown by a course of conduct, *Federal Land Bank v. Southern Credit Corp.*, 188 Miss. 192, 192 So. 827 (1940), but will not be inferred from doubtful or ambiguous factors. *Central Washington Bank*, at 354. Whether a waiver or consent has occurred is a question of fact, unless reasonable minds could reach but one conclusion. *Central Washington Bank*, at 353.

Here, counsel for landlords and counsel for tenant David Melgren specifically decided not to contact buyers and potential buyers of the hay to avoid "scaring them off". This agreement to "keep quiet" about the tenant's financial position was entered into on or about October 1, 1988, at a time when they knew the hay was being purchased by third parties and the tenants had not paid any 1988 rent. Rooses made two purchases totaling $5,694.15 after October 1, 1988. There is an issue of material fact as to whether the landlords waived their lien rights or consented to the sales. *Central Washington Bank*, at 353; Restatement (Second) of Torts § 141.

■ In addition to the issue of whether there was waiver or consent to sell, the record does not establish as a matter of law the existence of valid crop liens by Michel or Solbrack. A landlord whose lease provides for cash rent payments has a lien on all crops grown on the leased land for 1 year's rent due or to become due within 6 months following harvest. RCW 60.11.020(1). The landlord's lien need not be filed before completion of harvest. However, until filed, it does not have priority over other valid suppliers' liens and perfected security interests. RCW 60.11.040(1), (4); *In re Esparza*, 118 Wn.2d 251, 268, 821 P.2d 1216 (1992). Since "[n]otice is the cornerstone of the crop lien statute", a landlord's lien is not effective as to buyers of the liened crop until it is filed. *Cf. Esparza*, at 268.

Michel and Solbrack filed their claims of lien on April 15, 1988. As a matter of law, the liens could only be effective as to buyers of the liened crops on and after April 15. *Cf. Esparza*, at 268. Since the judgment includes a $2,092.50

purchase by Rooses on March 9, 1988, *before* the filing of the liens, the judgment is in error.[7]

A remand is also necessary because the record does not contain evidence sufficient to establish whether the hay purchased by Rooses came from the Michel farm unit, the Solbrack unit, or from both units. Solbrack would not have a lien on hay harvested from the Michel property. Similarly, Michel would not have a lien on hay harvested from the Solbrack property. Further, there is an issue of fact as to the amount of rent due for 1988. Michel averred the rent due him was $7,050. Solbrack averred the rent due him was $9,375. However, in answering the landlords' interrogatories, tenant David Melgren stated he owed Michel $5,625 and owed Solbrack $7,875.

■ Finally, although the trial court awarded attorney fees to Michel and Solbrack, such fees were improper. As to Rooses, the action was not a foreclosure of a landlord's lien, but an action based on conversion and eloignment. Attorney fees are not recoverable in an action for conversion or eloignment. *See Adams v. Harvey*, 129 Wash. 483, 225 P. 407 (1924).

Since there were genuine issues of material fact for the trier of fact and Michel and Solbrack failed to prove they were entitled to judgment as a matter of law, the trial court erred in granting summary judgment.

We reverse and remand for trial.

MUNSON and SWEENEY, JJ., concur.

---

[7]The $15,878.78 judgment appears to be based on the following purchases made by Rooses, although it is 20 cents less than the total purchase price.

| Date | Amount |
|------|--------|
| 03/09/88 | 2,092.50 |
| 07/13/88 | 3,127.30 |
| 08/31/88 | 2,500.00 |
| 08/31/88 | 2,465.03 |
| 11/08/88 | 2,754.85 |
| 11/09/88 | 2,939.30 |
| Total | $15,878.98 |