[No. 24748.   Department Two.   December 15, 1933.]

H. L. MOREHOUSE, *Respondent,* v. SPOKANE SECURITY FINANCE CORPORATION, *Appellant.*[1]

*G. E. Lovell,* for appellant.
*John E. Blair,* for respondent.

TOLMAN, J.—Respondent, as plaintiff, sued to recover the value of certain personal property alleged to have been converted by the defendant.  After a trial on the merits, findings of fact and conclusions of law were made by the trial court and a judgment in favor of the plaintiff for $650 and costs was entered.  From that judgment, the defendant has appealed.

[1]Reported in 27 P. (2d) 697.

No statement of facts is brought to this court, the appellant contending that the facts found do not support the judgment.

Aside from formal matters, the trial court, in substance, found that one H. C. Jason was the owner of all of the capital stock (except one share owned by his wife) of a corporation known as the Jason Piano Company, and that Jason was the manager and in control of the business of the corporation, which was the sale of pianos and like merchandise under conditional sales contracts; that a copartnership composed of H. C. Jason and H. L. Morehouse, doing business under the trade name of Power City Finance Company, of which Jason was the managing partner, also existed and worked in close unison with the corporation. It was the practice of Jason, as manager of the corporation, to report the conditional sales contracts as acquired by the corporation to the copartnership, and to cause such contracts to be entered upon the books of the corporation, and to take and receive from the funds of the copartnership the amount of such contracts, less a discount, presumably using the amount so received in the business of the corporation.

The court found that, by this course of dealing, it was the intention of Jason, acting for the corporation, to transfer title to such contracts to the copartnership, and that this course was followed with respect to the contracts covering the particular personal property involved in this action; the books of the copartnership showing it to be the owner of all such contracts. The court also found that it was the practice of Jason, as the manager of the corporation, when defaults occurred, to repossess the property and place the same in storage. Apparently, the conditional sales contracts, when made, were placed of record, but nothing was

placed of record showing the transfer thereof to the copartnership or showing repossession.

The particular property here involved was repossessed in the customary manner, and was placed by Jason in storage in a warehouse under the name of Jason Piano Company, and a warehouse receipt was issued therefor to the Jason Piano Company. Thereafter, Jason obtained a personal loan from one Swanson, and undertook to secure the payment of the same by delivering to Swanson the warehouse receipt covering this property; and the warehouseman was notified of the transfer, and advised that Swanson had become the owner of the warehouse receipt and of the property. Shortly following this, Jason made a written assignment and transfer of all of his interests in the copartnership to the respondent Morehouse; and thereupon Morehouse advised the warehouseman that, by virtue of such assignment, he, Morehouse, had become the owner of the pianos and other property covered by the warehouse receipt, and directed the warehouseman to continue to hold such property for him and subject to his order. Still later, apparently learning that the warehouse receipt had been delivered to Swanson, respondent Morehouse purchased from Swanson the promissory note made by Jason to Swanson, and obtained from Swanson the note and warehouse receipt. Thereupon, respondent immediately notified the warehouseman that he had so acquired the warehouse receipt from Swanson, and requested that the storage company make out a new warehouse receipt direct to him.

This, the warehouseman promised and proceeded to do; and while the new receipt was in the course of preparation, the appellant finance corporation caused the property described in the warehouse receipt and so

in storage to be seized by the sheriff of Spokane county under a writ of attachment issued out of the superior court in an action in which it was the plaintiff and H. C. Jason was the defendant, as the property of H. C. Jason; and thereafter, in due course, caused the same to be sold by the sheriff, it, the plaintiff in that action, becoming the purchaser at the sheriff's sale. The court found that the value of the property at the date of the attachment and at the date of the sale was $650, and from these facts reached the conclusion that respondent Morehouse had become, and was, the owner of the personal property prior to the levy of the writ of attachment, was entitled to the possession thereof, and that the act of appellant finance corporation, in attaching and selling the property, constituted a conversion.

It seems important to keep in mind at all times that the appellant was not a purchaser for value, and did not deal with the property upon any theory of apparent ownership in Jason or authority, real or apparent, in him to make disposition of the property. It was a creditor not of the piano company, but a creditor of Jason personally, and it seized the property as being the property of Jason individually. Hence, in legal effect, it, by its levy, stepped into Jason's shoes. If Jason had title when the levy was made, then that title has passed by the seizure and sale to the appellant. If Jason had no title at the time of the levy, then no title has passed to the appellant.

Upon the other hand, respondent must recover, if at all, upon the strength of his own title; and if he had no title when the levy was made, then nothing of his was converted, and he may not obtain payment for the conversion of property in which he had no interest. There being no right of creditors or of innocent or subse-

quent purchasers involved (except possibly as to the Swanson transaction, which we find it unnecessary to consider), we must here inquire whether, as between the parties, there was a transfer of title by the Jason Piano Company to the copartnership of which respondent was a member. If so, the transfer of Jason's interest in the copartnership to the respondent vested full title to all of the assets of the copartnership in him.

There can be no doubt that the piano company had a perfect right to sell its choses in action to the copartnership. No creditor of the piano company is complaining, and since no fraud is suggested, no one could complain. Cases such as *Fales Co. v. Seiple Co.*, 171 Wash. 630, 19 P. (2d) 118, therefore, are not in point. Rem. Rev. Stat., § 5827, by its terms is made to apply only in favor of existing creditors, or innocent purchasers, and since here none of either class is shown to exist, the statute is wholly inapplicable.

Presumably, the transaction was a just and fair one, and the piano company thus received the full value of that which it sold. As between the two parties to the transaction, was it necessary that there be a formal written assignment, and that something be placed of record showing that the title to the chose in action had passed to the copartnership?

The only written evidence of the thing transferred was the conditional sales contract filed with the county auditor. Any copy which might have been retained by the piano company was but a mere memorandum, having no life or virtue in itself. The original contract, being so on file, was, of course, not capable of actual, manual delivery to the purchaser; and the merchandise which was represented by that contract was rightly in the hands of the conditional sales vendee, so

that there could be no manual delivery of the goods themselves to the purchaser of the contract which represented the goods.

The only, or, at least, the main, purpose of completing a sale by delivery or of performing any other act which may constitute notice, is to protect the rights of innocent purchasers and others dealing with the property. Here, there are none such, and the question of notice is wholly immaterial.

Jason, as the managing officer of the piano company, had power and authority to discount its contracts. Jason, as the managing partner of the copartnership, had authority to buy and pay for such contracts; and, as between the piano company on one side and the copartnership on the other, we think that Jason by his acts bound both parties. The piano company could not have avoided the sale for anything less than fraud. Neither could the copartnership. So that Jason's acts passed the equitable and beneficial title to the copartnership, and, we think, the legal title as well.

"A chose in action may be assigned by parol as well as by writing, and, where there is no written assignment, it is a question of fact whether there was a transfer." (syllabus) *Riker v. Curtis,* 17 Misc. Rep. 134, 39 N. Y. Supp. 340.

The foregoing is quoted with approval by this court in *Seattle National Bank v. Emmons,* 16 Wash. 585, 48 Pac. 262.

■■ The trial court found, as a fact, that there was such an assignment and transfer of title, and that finding supports the judgment. Of course, the assignment of the contract carried with it the reserved title to the property which it represented. *State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 Pac. 340, 3 A. L. R. 235. The subsequent forfeiture of the rights of the original vendee vested the full title in the

copartnership from whom it had passed to the respondent at the time the writ of attachment was levied.

The judgment is affirmed.

BEALS, C. J., HOLCOMB, GERAGHTY, and MAIN, JJ., concur.