[No. 24667.   Department One.   January 4, 1934.]

E. D. Smith *et al., Appellants,* v. Thomas S. Dahlquist
*et al., Respondents.*[1]

*R. W. Greene,* for appellants.

*H. C. Thompson* and *Ralph O. Olson,* for respondents.

Main, J.—This action was brought to recover the value of personal property which, it is claimed, the defendants converted.   After the defendants had filed their answer, they made an application to have other parties brought in and to file a cross-complaint; which application was denied.   The case went to trial before

[1]Reported in 28 P. (2d) 262.

the court and a jury upon the issues made by the complaint and the answer, which contained no plea for affirmative relief. The jury returned a verdict for the defendants. The plaintiffs moved for judgment notwithstanding the verdict and, in the alternative, for a new trial; both of which motions were overruled, and the plaintiffs appeal.

The facts are these: The respondents Thomas S. Dahlquist and Amelia Dahlquist, his wife, were the owners of a three-story building in the city of Bellingham, the second and third stories of which were devoted to hotel purposes and which was known for a time as the Mullin Hotel, and later as The Antlers. The appellants, E. D. Smith and Edna J. Smith, his wife, were experienced in the management of hotels, and entered upon negotiations for the purchase of the furniture and fixtures in The Antlers. October 25, 1930, Agnes Mullin, the then owner of the furniture and fixtures in the hotel, gave to the appellants a bill of sale for the same, which recited that possession was not to be given until November 1, 1930. The purchase price, though not recited in the bill of sale, was six thousand dollars. In order to finance the purchase, the appellants applied to the Pacific Loan Company, of which H. T. Morton was the principal stockholder and managing officer, for a loan. Morton advanced six thousand dollars, and took a chattel mortgage to secure the notes given therefor. This mortgage was dated November 1, 1930.

October 24, 1930, Dahlquist and wife executed a lease for the hotel, and T. A. Morton, a brother of H. T. Morton, the manager of the Pacific Loan Company, was named as lessee. This lease contains two or three interlineations, and carries a rider which provides that the lessors, at their option, may terminate the lease and re-enter possession of the premises "with the right

to retain and use said furniture without charge therefor during the remainder of said term.'' The lease also contained a provision that, in case of default, upon ten days' notice, the lessors might terminate the lease and re-enter the premises. The term of the lease was for three and a half years, beginning November 1, 1930, and expiring April 30, 1934.

After these various instruments had been executed, and on November 1, 1930, the appellants went into the possession of the hotel, and operated it until sometime in December, 1931, when they removed from the hotel their personal effects and the furniture which they had placed therein and which was not covered by the bill of sale. At the time they moved from the hotel, nothing had been paid either upon the principal or the interest on the notes secured by the chattel mortgage, and they were in arrears for rent to the extent of approximately one thousand dollars.

On or about January 9, 1932, the Dahlquists gave notice to the lessee that, unless the rent in default was paid, they would elect to forfeit the lease. Subsequently, on January 19th of the same month, they brought an action seeking to recover the possession of the premises. While this action was pending, and before it had been tried, the Dahlquists caused a writ of restitution to be issued, and on the 23rd of January, 1932, a deputy sheriff went to the premises and placed the Dahlquists in possession thereof. About an hour and a half before the sheriff executed the writ, the lessee, T. A. Morton, had requested Mrs. Smith to come to the hotel, which she did, and upon her arrival he undertook to turn over the possession of the furniture and fixtures therein to her. Thereafter, this action was brought against the Dahlquists, the sheriff and his bondsmen, claiming that the Smiths were the owners and entitled to the possession of the property, and that

the Dahlquists and the sheriff had converted the same.

Without discussing the matter, it will be assumed that the writ of restitution under which possession was taken was wholly void, for reasons not necessary here to state, and furnished no protection either to the Dahlquists or to the sheriff.

Upon the trial, when the lease was offered in evidence, it was objected to by the appellants on the ground that it was not the lease under which they took possession because of the interlineations and the rider above referred to. The objections were overruled, and the lease was admitted. The court, in its instructions, submitted the question to the jury as to whether the interlineations had been made and the rider placed on the lease prior to the time that it had been executed and delivered.

Under the evidence, the jury had a right to find that the interlineations had been made and the rider placed upon the lease prior to the time it was executed by the parties. There was no error in admitting the lease in evidence or in submitting it to the jury.

The principal question in the case for the jury to determine was whether the appellants were the owners of the property in question and entitled to the possession of the same.

The jury were instructed that the appellants were not entitled to recover unless they "were both the owners of said property and entitled to the possession of the same." To this instruction, there was no exception, and it therefore is the law of the case on that question. *Frich v. Department of Labor & Industries,* 169 Wash. 282, 13 P. (2d) 67.

In determining whether the appellants were entitled to the possession of the property at the time the writ of restitution was served, the jury had a right to take into consideration all the surrounding facts and

circumstances. The lease, as above stated, contained a rider to the effect that, in case of default, the lessors were entitled to retain the furniture until the end of the term fixed in the lease. At or about the time the appellants left the property in December, 1932, Mr. Dahlquist and H. T. Morton had a conference with reference to what should be done, and in this respect Mr. Morton testified:

"We were both becoming disgusted with the Smiths and agreed that my brother would go up and run the hotel and that all the money that came in above bare living expenses would be turned over to Dahlquist with hopes of selling the hotel."

At the time the appellants abandoned the hotel, they executed an agreement with the Pacific Loan Company wherein it was recited that no part of the principal or interest on the six thousand dollars covered by the chattel mortgage had been paid, that they were unable to pay their obligations and desired

" . . . to cease to personally further operate said Antlers Hotel and wishes to dispose of said furniture and give second party [Pacific Loan Company] complete power and authority to sell and dispose of the same."

After this agreement was entered into, and after the conference with Mr. Dahlquist above mentioned, H. T. Morton's brother, T. A. Morton, was placed in charge of the hotel to operate it until it could be sold. T. A. Morton, while the lease stood in his name so far as the evidence showed, had no beneficial interest in the transaction. Naming him as lessee appears to have been merely a step in arranging the financing of the purchase for the appellants. T. A. Morton, while he was operating the hotel, was necessarily the agent, not only of the Pacific Loan Company, but of the Dahlquists as well. There is no showing that, as such agent, he had

authority to turn the possession of the property over to Mrs. Smith. Mr. Smith testified as follows:

"Q. And after you executed this agreement with the Pacific Loan Company and turned the property over to them you never collected any more rental there or had anything more to do with the hotel? A. No, sir. Q. And that was about the 29th of December, 1931? A. Yes, sir."

Mrs. Smith testified as follows:

"Q. Well, from that time up until the 23rd of January you were not around that place, were you, until the morning of the 23rd when you went down to take possession again? A. No, I wasn't. Q. You wasn't there? A. No. Q. Had nothing to do with it? A. No. Q. And nothing to do with the management of it? A. No, sir. Q. Nor its ownership? A. No, sir."

Under these facts and others that might be recited more in detail, there was abundant evidence to sustain the finding of the jury that the appellants were not entitled to the possession of the property at the time T. A. Morton attempted to place Mrs. Smith in possession thereof. The appellants must recover, if at all, upon the strength of their own title and right to possession, without regard to the weakness of that of their adversaries. 26 R. C. L. 1131; *Morehouse v. Spokane Security Finance Corporation,* 175 Wash. 501, 27 P. (2d) 697.

There are objections made to certain testimony which was admitted, but we find no error in this regard. The history of the transaction from its inception to its close was material as bearing upon the ultimate fact of whether the appellants were entitled to the possession.

In stating the issues to the jury, the court stated them as they would have been had the cross-complaint, above mentioned, been permitted to be filed, and in this the instruction was erroneous. But the

error does not require reversal, because it is reasonably plain that it could not have been prejudicial. The issues which the jury were to determine were definitely and clearly submitted to them by instructions which followed the instruction which purported to state the issues.

The judgment will be affirmed.

BEALS, C. J., MITCHELL, MILLARD, and STEINERT, JJ., concur.