91 F.3d 152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
HYUNDAI MERCHANT MARINE CO., LTD., a corporation; Hyundai
Merchant Marine (America), Inc., a corporation,
Plaintiffs-Appellants-Cross-Appellees,
v.
OLYMPIC CONTAINER CORPORATION, a corporation,
Defendant-Third-Party-Plaintiff-Appellee-Cross-Appellant,
v.
HYUNDAI HEAVY INDUSTRIES CO., LTD., a corporation,
Third-Party-Defendant-Appellant-Cross-Appellees.
 Nos. 95-35633, 95-35685.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1996.
Decided July 5, 1996.
 
 Before: LAY,* FERGUSON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This case arose as an admiralty action for declaratory and injunctive relief regarding the parties' rights under a lease for cargo containers. Olympic Container Corporation ("Olympic") leased 850 cargo containers to Hyundai Merchant Marine (America), Inc. ("Hyundai"). In this appeal, Hyundai and its related entities, appeal the district court's partial summary judgment order, judgment after a bench trial, and award of attorneys' fees and costs. Olympic cross-appeals and challenges the amount of the damage award. We AFFIRM.
 
 DISCUSSION[1]
 A. Summary Judgment
 
 3
 The district court granted Olympic's motion for summary judgment on the issue of whether Olympic properly terminated the 1988 lease agreement. Hyundai argues on appeal that the district court erred in granting partial summary judgment because: (1) Olympic's notice of termination was defective; (2) Olympic waived the right to terminate; (3) the termination caused an unreasonable forfeiture; and (4) factual issues exist regarding how Olympic applied Hyundai's payments.
 
 
 4
 A grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). On appeal the court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 1. Notice of Default
 
 5
 Hyundai argues that the December 5, 1991 letter was Olympic's only formal notice of termination and it was defective. We disagree.
 
 
 6
 Paragraph 5 of the lease defines what is a default and the lessor's remedies upon default. Paragraph 2 limits when the lessor can declare a default for nonpayment of rent. Under the terms of the lease, an event of default cannot be declared for late payment of rent until the rent is 30 days late. However, the breach of any other obligation, including the obligation to pay "additional rent," can be declared an event of default. Under the lease, if the lessor declares an event of default for the nonpayment of "additional rent," then the lessor must give the lessee a minimum of fifteen days to pay the "additional rent" and cure the default.[2]
 
 
 7
 Hyundai's argument that the December 5 letter was defective is meritless for a number of reasons. First, Hyundai misconstrues the purpose of the December 5 letter. The letter was a notice of default, not a notice of termination. Second, the December 5 letter complied with the notice of default requirements set out in paragraphs 2 and 5 of the lease agreement. Third, Hyundai's accounting of the payment of monthly rental installments is simply inaccurate. The accounting records and Hyundai's own admissions establish that as of December 27, 1991, Hyundai had made only eleven of the twelve payments due for 1991. The twelfth payment having been due on November 30, 1991. Fourth, Hyundai owed "additional rent" for prior months' late payments and a portion of the "additional rent" charges were more than thirty days past due at the time of the notice of default.
 
 
 8
 In sum, the December 5, 1991 letter was an effective notice of default. Therefore, Olympic properly terminated the lease when the default remained uncured for more than fifteen days.
 
 2. Waiver
 
 9
 Hyundai contends that the district court erred in concluding that Olympic did not waive its rights to terminate the lease for nonpayment of "additional rent." The existence of a waiver of a contract right is a question of fact and subject to the clearly erroneous standard. L.K. Comstock & Co. v. United Eng'rs & Constructors Inc., 880 F.2d 219, 221 (9th Cir.1989).
 
 
 10
 Waiver is the intentional relinquishment of a known right. Wagner v. Wagner, 621 P.2d 1279, 1283 (Wash.1980) (en banc). Implied waiver can be established by a course of conduct, Michel v. Melgren, 853 P.2d 940, 944 (Wash.Ct.App.1993), but there must be unequivocal acts or conduct evincing an intent to waive. Wagner, 621 P.2d at 1284. The person against whom waiver is claimed must have intended to relinquish the right and his action must be inconsistent with any other intent than to waive it. Id. at 1283-84. "Further, the person against whom waiver is asserted must have understood that the consequences of his or her actions would be relinquishment of the right." In re Welfare of: S.V.B., 880 P.2d 80, 85 (Wash.Ct.App.1994).
 
 
 11
 In the present case, Hyundai does not contend that Olympic waived its right to be paid the "additional rent." Instead, Hyundai argues that Olympic waived its right to terminate the lease for failure to pay the "additional rent" when it accepted the payments on November 18 and December 16, 1991. Hyundai's argument is not persuasive.
 
 
 12
 It is undisputed that prior to December 5, 1991, Olympic had never invoiced Hyundai for "additional rent" and Hyundai had never paid any "additional rent." It is also clear that Olympic demanded payment of the additional rent in the December 5 letter and the accompanying invoice. Even though Hyundai admitted that it owed the "additional rent," Hyundai failed to cure the breach. In the December 5 letter, Olympic reasserted its right to collect "additional rent" and declare a default for the nonpayment of "additional rent." See Seattle-First Nat'l Bank v. Westwood Lumber, Inc., 829 P.2d 1152, 1160 n. 7 (Wash.Ct.App.1992). Thus, Olympic clearly did not waive its right to terminate the lease for the nonpayment of the "additional rent."
 
 3. Forfeiture
 
 13
 Hyundai also claims that the termination of the lease resulted in a forfeiture. However, the fact that the terms of a lease may result in a loss, which could be characterized as a forfeiture, is not determinative as to whether the lease should be enforced according to its terms. See Heckman Motors, Inc. v. Gunn, 867 P.2d 683, 685 (Wash.Ct.App.1994). In the present case, the express terms of the lease addendum provided that the purchase option could only be exercised if Hyundai was not in default. Because we hold that Olympic properly terminated lease in December of 1991, we conclude that Hyundai has not been subjected to an unreasonable forfeiture.
 
 4. Issues of Material Fact
 
 14
 Hyundai contends that the district court erred in granting summary judgment because there were material issues of fact concerning how Olympic credited the November 18 and December 16 rental payments. As of the December 1, 1991, Hyundai had made only ten of the twelve payments due for 1991. Hyundai had never paid any "additional rent" even though nineteen of the last twenty-one payments were over ten days late. On December 5, 1991, Olympic sent Hyundai a notice of default and demanded that Hyundai pay all sums that were past due. Regardless of how Olympic credited the November and December payments, Hyundai still owed "additional rent" and at least one month's rental installment at the end of the fifteen day period to cure the default. Therefore, the accounting of the lease payments did not present issues of material fact.
 
 
 15
 After considering all of Hyundai's challenges to the summary judgment order, we conclude that the district court did not err in granting Olympic's motion for partial summary judgment.
 
 B. Conditional Sale
 
 16
 At trial, Hyundai argued that the lease was really a conditional sale agreement and therefore, Olympic's only rights in the cargo containers were as a security interest. The district court determined that: "The Lease and separate purchase option do not constitute an installment or conditional sale contract in disguise. The Lease is exactly what it says it is: a lease between OCC [Olympic] and HMMA [Hyundai] with a separate option to purchase under certain conditions." We agree.[3]
 
 C. Damages
 
 17
 Three damages issues are raised by the parties. Olympic, on cross-appeal, challenges the district court's denial of detention and demurrage damages and the court's reduction in daily rental and storage damages. Hyundai, on appeal, argues that the repair damages were excessive and resulted in economic waste.
 
 
 18
 A district court's award of damages is reviewed for an abuse of discretion. Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1495 (9th Cir.1995). However, a district court's computation of damages is reviewed for clear error and the selection of the correct legal standard for measuring damages is reviewed de novo. Gayle Mfg. Co. v. Federal Sav. & Loan Ins. Corp., 910 F.2d 574, 578 (9th Cir.1990).
 
 1. Detention and Demurrage Damages
 
 19
 Olympic contends that the district court erred when it did not award Olympic the detention and demurrage rates established by the lease. A detention and demurrage clause in a maritime contract is simply a liquidated damages provision. Ocean Transp. Line, Inc. v. American Phil. Fiber Indus., Inc., 743 F.2d 85, 90 (2d Cir.1984). Under Washington law, liquidated damages clauses are enforceable if the following two factors are satisfied: "First, the amount fixed must be a reasonable forecast of just compensation for the harm that is caused by the breach. Second, the harm must be such that it is incapable or very difficult of ascertainment." Watson v. Ingram, 881 P.2d 247, 249 (Wash.1994) (en banc) (citation omitted). The reasonableness of the liquidated damages provision is judged as of the time of contract formation, rather than at the time of breach or trial. Id.; Wallace Real Estate Inv., Inc. v. Groves, 881 P.2d 1010, 1015-16 (Wash.1994) (en banc).
 
 
 20
 In the present case, Olympic's detention and demurrage rates were not a reasonable forecast of damages. Olympic's daily demurrage rates amounted to $27,500 each day in rental for the 850 containers. At trial, Olympic was unable to establish the reasonableness of these rates. Moreover, several factors indicate that the demurrage rates were an inappropriate measure of damages in a container lease because they were not a reasonable forecast of damages: (1) the fair market value for daily rental of containers could easily be ascertained by the spot market rate; (2) the demurrage rates were $25-$35 per day for each container, while the spot market rates were $3 to $5 per day; (3) only shipping companies are able to publish their demurrage rates with the Federal Maritime Commission; and (4) the rates that Olympic imposed on Hyundai were established in October, 1991, not at the time of contracting. All of these factors are evidence that the demurrage rates were unreasonable in this container lease and bore no relationship to actual damages.
 
 
 21
 Thus, the district court did not err in finding the detention and demurrage provision to be unenforceable. Additionally, the district court did not abuse its discretion in determining that the best approximation of Olympic's actual damages could be calculated by employing the fair market rate for the containers, $3 per day per 20-foot container and $4 per day per 40-foot container.
 
 
 22
 2. Reduction of Daily Rental and Storage Damages
 
 
 23
 Olympic contends the district court erred when it reduced the original rental and storage damage award by $753,293.96, thereby granting Olympic a total of $2,940,967.59 in rental and storage damages. Under the terms of the lease, once Hyundai returned a container, Olympic had 30 days to repair the container. During this 30 day period Hyundai continued to be liable for rent. The lease provision, thereby, allowed Olympic to repair the returned containers and subsequently lease them to another party with no loss of rental income.
 
 
 24
 Olympic argues that the district court failed to apply the terms of the lease. The district court found that Olympic should not recover damages under the thirty day rent extension because the purpose of the provision was to allow Olympic time to repair the containers and Olympic no longer intended to make the repairs. Olympic contends it was improper for the district judge to conclude that Olympic did not intend to repair the containers because Olympic did not have enough money to pay for the repairs. Nonetheless, we defer to the district judge's finding that Olympic did not intend to repair the containers because it is a credibility determination. See Anderson v. City of Bessemer, 470 U.S. 564, 573-74 (1985). Moreover, the record contains significant evidence that the district court gave thorough consideration to the proper measure of damages.
 
 
 25
 Therefore, we conclude that the district court did not abuse its discretion in fashioning an appropriate remedy where it found the lease provision did not apply because Olympic did not intend to repair the containers.
 
 3. Economic Waste
 
 26
 Hyundai argues that the damages awarded to Olympic constitute economic waste because the cost to repair some of the containers exceeds their replacement cost. However, the doctrine of economic waste is not applicable because it has been utilized almost exclusively in construction contract disputes. See, e.g., Eastlake Const. Co. v. Hess, 686 P.2d 465, 473-74 (Wash.1984) (en banc). Therefore, the district court did not abuse its discretion in awarding repair damages in accordance with the lease.
 
 D. Attorneys' Fees and Costs
 
 27
 Hyundai challenges the adequacy of the documentation which supports the award of attorneys' fees and costs. Awards of attorneys' fees are generally reviewed for an abuse of discretion. Haworth v. Nevada, 56 F.3d 1048, 1051 (9th Cir.1995); National Info. Servs., Inc. v. TRW, Inc., 51 F.3d 1470, 1471 (9th Cir.1995). "[A] District Court should not award attorneys' fees unless the prevailing party presents sufficiently detailed records that the time expended and the need for the services are clearly established." White v. City of Richmond, 713 F.2d 458, 461 (9th Cir.1983) (citing Hensley v. Eckerhart, 461 U.S. 424, 440-41 (1983) (Burger, C.J., concurring)). In addition, the district court must "provide a concise but clear explanation of its reasons for the fee award." Hensley, 461 U.S. at 437 (1983).
 
 
 28
 In the present case, the district court provided a fifteen page supplemental order which detailed its analysis of the attorneys' fees and costs award. In this supplemental order, the district court adequately explained the reasons for its fee award and analyzed the reasonableness of the fees and costs claimed in relation to the course and scope of the litigation. We conclude that the documentation of legal fees and costs was sufficient and the district court did not abuse its discretion in awarding Olympic's attorneys' fees and costs in the amount of $1,477,443.77.
 
 CONCLUSION
 
 29
 We AFFIRM the district court's partial summary judgment order, the judgment, and the award of attorneys' fees and costs.
 
 
 
 *
 Honorable Donald P. Lay, United States Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Olympic filed a motion to supplement the record on appeal. Olympic requests that it be allowed to submit a letter, which was not admitted into evidence at trial, to rebut an accusation by Hyundai that Olympic misrepresented the facts to this court. The rule is well-established that documents not admitted into evidence by the district court are not part of the clerk's record and cannot be part of the record on appeal. Fed.R.App.P. 10(a); Kirshner v. Uniden Corp. of America, 842 F.2d 1074, 1077 (9th Cir.1988). Therefore, we deny Olympic's motion
 
 
 [2]
 Hyundai relies on Equitable Life Leasing Corp. v. Cedarbrook, Inc., 761 P.2d 77 (Wash.Ct.App.1988), for the proposition that unpaid late charges cannot be utilized to support a claim of default. However, Cedarbrook is distinguishable from the present case because the lease in Cedarbrook specifically described an event of default as the nonpayment of rent. Id. at 81. In the present case, an event of default occurs when any obligation under the lease is breached
 
 
 [3]
 Applying U.C.C. § 1-201(37) (as revised in 1987) to the present transaction leads to the conclusion that the lease was in fact a true lease. However, we decline to articulate a detailed analysis under the statute because we find that Hyundai's belated claim that the lease is really a conditional sale after years of treating the lease as a true lease is disingenuous at best