FILED
COURT OF APPEALS
DIVISION II

2015 APR 14 AM 9: 51

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PETER LaROCK, an unmarried man, and AJL INVESTMENTS, INC., a Washington Corporation, | No. 45490-4-II |
| Respondents, | UNPUBLISHED OPINION |
| v. | |
| EDWARD KUNCHICK and KATHERINE KUNCHICK, husband and wife; UP TO GRADE CONCRETE PRODUCTS, INC., a Washington Corporation; PRECAST CONCRETE INDUSTRIES, INC., a Washington Corporation, | |
| Appellants. | |

JOHANSON, C.J. — Edward Kunchick, his marital community, Precast Concrete Industries Inc. (PCI), and Up To Grade Concrete Products Inc. appeal the bench trial judgment in Peter LaRock's favor on LaRock's claims of unjust enrichment, conversion, and replevin. We hold that LaRock had standing to sue, that judgment for conversion was proper, that the trial court specifically found no partnership existed, that Kunchick was unjustly enriched, and that Kunchick was properly found personally liable. Accordingly, we affirm the trial court.

FACTS

LaRock was the sole shareholder of AJL Investments Inc., which did business as K&K Concrete Products (AJL)[1] in Everett. Kunchick was the owner of Up To Grade Concrete Products Inc. in Tacoma. In 2009, because of the poor economy, Kunchick closed Up To Grade and began working for LaRock, bringing Up To Grade's equipment and property with him to AJL.

In February 2011, AJL was evicted from its Everett location. LaRock and Kunchick relocated to Fife, moved AJL's equipment and other property to the new location, and agreed to form a new corporation called Precast Concrete Industries Inc. In order to prevent AJL's creditors from reaching PCI's assets, they left LaRock's name off of PCI's incorporation paperwork. Once LaRock had resolved AJL's debt problems or PCI was successful enough to handle the additional debt burden, it was agreed that LaRock would become a co-shareholder of PCI. LaRock prepared the incorporation paperwork, and he and Kunchick incorporated PCI on April 27, 2011, with Kunchick listed as PCI's sole shareholder. LaRock also created a set of books for PCI on AJL's computers and began to generate AJL's accounts receivable in PCI's name.

LaRock and Kunchick also agreed that LaRock would wind down AJL, work for PCI, and then take a short trip to Montana during which he would receive $600 a week from PCI plus certain expenses. But because PCI and Kunchick had not paid him and Kunchick was not speaking to him, LaRock returned from Montana early. Upon his return, LaRock found that he was locked out of PCI and that Kunchick and PCI refused to return to LaRock what was formerly AJL's property

---

[1] The parties refer to AJL interchangeably as K&K and AJL. Because there is a specific argument in this appeal about a transfer of assets from AJL to LaRock personally, we use AJL throughout in this opinion.

and its accounts receivable. Neither Kunchick nor PCI paid LaRock for any of his time or labor or for any part of PCI.

In June 2012, LaRock and AJL sued Kunchick, Kunchick's marital community, Up To Grade, and PCI (Kunchick) for a declaratory judgment that a partnership existed between Kunchick and LaRock, breach of fiduciary duties, receivership, unjust enrichment, conversion, and replevin. Kunchick filed a counterclaim for abuse of process.

On February 13, 2013, AJL sold its assets and liabilities to LaRock personally (the AJL transfer) and on February 22, AJL was dismissed from the lawsuit as a plaintiff. Kunchick argued that the AJL transfer was invalid, negating LaRock's standing to sue on AJL's behalf, because the AJL transfer was fraudulent under the Washington Uniform Fraudulent Transfer Act (UFTA)[2] or because the AJL transfer was an improper shareholder distribution under RCW 23B.06.400(2).

After a week-long trial, the trial court concluded that LaRock had standing because he owned all of AJL's assets and liabilities, including its "rights of action," and that Kunchick and PCI were liable for unjust enrichment, conversion, and replevin. Clerk's Papers (CP) at 875. The trial court also dismissed LaRock's other claims and Kunchick's counterclaim; found that LaRock and Kunchick had not formed a partnership, and ordered Kunchick and PCI to pay LaRock $25,000 for his "labor and services," $112,000 for what was formerly AJL's accounts receivable, $17,000 for personal property, and to return a list of other personal property that was on PCI's premises but formerly belonged to AJL and LaRock. CP at 873. Kunchick appeals the trial court's judgment.

---

[2] Ch. 19.40 RCW.

ANALYSIS

I. STANDARD OF REVIEW

We review a trial court's findings of fact for substantial evidence to support its findings and then review de novo whether those findings of fact support its conclusions of law. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341-42, 308 P.3d 791 (2013), *review denied*, 179 Wn.2d 1011 (2014). Unchallenged findings of fact are verities on appeal. *Humphrey Indus., Ltd. v. Clay Street Assocs., LLC*, 176 Wn.2d 662, 675, 295 P.3d 231 (2013). We make all reasonable inferences from the facts in LaRock's favor as the prevailing party below. *Scott's Excavating*, 176 Wn. App. at 342.

II. LAROCK HAD STANDING BECAUSE THE AJL TRANSFER WAS VALID

Kunchick argues that the trial court erred when it concluded that the sale of assets from AJL to LaRock was valid, thereby ensuring LaRock's standing to sue as an individual.[3] We agree with the trial court.

A. THE WASHINGTON UNIFORM FRAUDULENT TRANSFER ACT (UFTA)

Kunchick argues that the AJL transfer was invalid because it was a fraudulent transfer or an improper shareholder distribution. We disagree.

Washington's UFTA provides that

(a) [a] transfer made or obligation incurred by a debtor *is fraudulent as to a creditor* whose claim arose before the transfer was made or the obligation was incurred if

---

[3] Kunchick also cites to *Amende v. Town of Morton*, 40 Wn.2d 104, 241 P.2d 445 (1952), for the first time in his reply brief to argue that "[t]he general rule is that a plaintiff's failure to own the cause of action at the inception of suit is not cured by the plaintiff's later obtaining the cause." Reply Br. of Appellant at 10. However, Kunchick ignores the fact that AJL was a plaintiff at the inception of the suit and that it sold its claims to LaRock personally before the court dismissed it as a party. This is not a barrier to standing.

the debtor made the transfer or incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent *as to a creditor* whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

RCW 19.40.051 (emphasis added). A "creditor" is a person who has a "claim" against a debtor, defined broadly as a "right to payment." RCW 19.40.011(3), (4).

In order to avoid the AJL transfer because it was fraudulent under RCW 19.40.051, Kunchick must first establish that he is a "creditor" of AJL. RCW 19.40.051(a). Kunchick presented no evidence at trial and the court made no findings to support a conclusion that Kunchick had a "right to payment" from AJL. Kunchick points to no evidence in the record to establish that he was a creditor of AJL. Therefore, he fails the first step in the UFTA analysis.

Accordingly, Kunchick failed to show the AJL transfer was fraudulent and the trial court did not err when it concluded that LaRock had standing.[4]

## B. RCW 23B.06.400(2)

Kunchick also argues that the AJL transfer was invalid because it was an improper shareholder distribution under RCW 23B.06.400(2). RCW 23B.06.400(2) states that a corporation may not make a distribution to its shareholders if, after "giving [the distribution] effect,"

(a) [t]he corporation would not be able to pay its liabilities as they become due in the usual course of business; or

---

[4] Even if Kunchick were a creditor of AJL, he also presented no evidence at trial to establish that AJL did not receive reasonably equivalent value for the AJL transfer. The trial court made no finding and the evidence presented at trial does not support a finding that the $49,840 in loans that LaRock forgave in exchange for AJL's assets and liabilities was not "reasonably equivalent value." RCW 19.40.051(a).

(b) The corporation's total assets would be less than the sum of its total liabilities plus, unless the articles of incorporation permit otherwise, the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

Kunchick argues that subsection (b) applies because AJL had been administratively dissolved at the time of the AJL transfer.

At trial, LaRock testified that he thought AJL had become administratively dissolved at some point but was unsure when. LaRock also testified that he thought transferring AJL's assets and liabilities to himself personally might be part of the administrative dissolution process. The trial evidence is unclear whether or when AJL had been administratively dissolved, and the trial court's failure to find that AJL was administratively dissolved at the time of the AJL transfer was not erroneous.[5] Accordingly, the AJL transfer was not an improper shareholder distribution under RCW 23B.06.400(2), and the trial court did not err when it concluded that LaRock had standing to sue.

### III. CLAIM FOR CONVERSION

Kunchick argues that the trial court erred when it granted judgment in LaRock's favor on his conversion claim because LaRock consented or partially consented to Kunchick's use of the property. Kunchick does not challenge the trial court's findings of fact and argues that the trial court's conclusion that Kunchick "wrongfully withheld" LaRock's chattel was erroneous. CP at 876. We disagree.

---

[5] Even if AJL had been administratively dissolved at the time of the transfer of its assets, Kunchick did not present evidence that AJL's total assets were less than its total liabilities and the trial court made no relevant findings of fact on that issue.

6

A claim for conversion requires proof of three elements: that (1) Kunchick intentionally interfered with chattel that belonged to LaRock, (2) by either taking or unlawfully retaining it, and (3) thereby deprived LaRock, the chattel's rightful owner, of possession. *Aldaheff v. Meridian on Bainbridge Island, LLC*, 167 Wn.2d 601, 619, 220 P.3d 1214 (2009).

Here, the trial court found that Kunchick and PCI were in possession of LaRock's property, that this property was formerly in LaRock's possession, that LaRock permitted Kunchick and PCI to use the property "for the purpose of earning profits, in which he would be entitled to share," and that Kunchick and PCI "have used, and continued to use, this property to earn profits, but refuse to share them with LaRock, and have likewise refused LaRock's demand" to return the property. CP at 874. Kunchick does not challenge these findings and, therefore, they are verities on appeal. *Humphrey Indus., Ltd.*, 176 Wn.2d at 675.

Based on these facts, the trial court concluded that LaRock was the rightful owner of the listed property and that "[b]y refusing to return this property to LaRock upon his demand, and by continuing to maintain possession and use of the property beyond the scope of LaRock's consent, defendants have willfully interfered with, and wrongfully withheld, chattel belonging to LaRock, depriving him, the rightful owner, of possession." CP at 876. The trial court's findings support this conclusion. Because his property was not used for the permitted purpose, Kunchick and PCI unlawfully retained LaRock's property and his claim for conversion is proper.

Kunchick merely cites two cases without analysis to support his argument that even "partial consent" is sufficient to relieve him of liability for conversion: *Banning v. Lively*, 87 Wash. 580, 152 P. 4 (1915), and *Michel v. Melgren*, 70 Wn. App. 373, 853 P.2d 940 (1993). Br. of Appellant at 19. But neither case supports Kunchick's argument. Because Kunchick provides no argument

as to why these cases support his position, we consider this argument no further. *Stiles v. Kearney*, 168 Wn. App. 250, 266-67, 277 P.3d 9 (citing *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290, *review denied*, 136 Wn.2d 1015 (1998)), *review denied*, 175 Wn.2d 1016 (2012).

Accordingly, because the trial court's unchallenged findings of fact support its conclusion that Kunchick and PCI exceeded the scope of their permission to use LaRock's property and Kunchick presents no compelling argument otherwise, the conversion claim is proper. Kunchick fails to meet his burden of proving consent as an affirmative defense. We affirm the trial court's judgment in LaRock's favor for conversion.

## IV. DAMAGES FOR UNJUST ENRICHMENT

Kunchick argues that the trial court erred in awarding all of the accounts receivable to LaRock when there was a conflict between the trial court's oral and written rulings as to whether a partnership had been formed. Because the written ruling controls, we disagree.[6]

### A. WRITTEN RULING CONTROLS

Where the trial court's oral decision conflicts with its written findings and conclusions, the written decision controls. *Stiles*, 168 Wn. App. at 258 (citing *Ferree v. Doric Co.*, 62 Wn.2d 561, 566-67, 383 P.2d 900 (1963)). The trial court's "oral decision . . . has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment." *Ferree*, 62 Wn.2d at 566-67.

---

[6] Kunchick also appears to argue that unjust enrichment is not an appropriate theory because it "cannot arise in respect to a duty imposed by contract." Br. of Appellant at 16. However, he does not argue that a contract existed, LaRock did not plead breach of contract, and the trial court did not make any findings or conclusions regarding the existence of a contract. Therefore, we do not consider this argument further.

8

The trial court's written finding of fact regarding partnership stated that "LaRock and Kunchick agreed to do business together on various occasions, but did not enter into a formal partnership agreement." CP at 873. The trial court's written conclusion of law plainly states that "[p]laintiff is not entitled to a declaratory judgment that a partnership exists between himself and defendant, Edward Kunchick." CP at 875. The trial court's written finding and conclusion that no partnership was formed controls.

## B. BENEFITS CONFERRED ON KUNCHICK

Kunchick also argues that the trial court failed to distinguish which benefits were conferred on Kunchick specifically. Again, we disagree.

A suit for unjust enrichment seeks to recover the "value of the benefit retained" where no contractual relationship existed because notions of justice and fairness require it. *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).

Here, the trial court specifically listed the benefits that Kunchick and PCI retained when Kunchick locked LaRock out of PCI. The trial court found that LaRock and Kunchick acted as if they were going into business together at PCI and that LaRock's conduct—transferring all of AJL's property and assets to PCI, setting up new accounts receivable for PCI at AJL, and working many hours to help set up PCI and wind down AJL—"can only be explained by an expectation of co-ownership" in PCI. CP at 873. The trial court found that based on LaRock's and Kunchick's conduct to that point, this expectation was reasonable. The findings of fact also state that "[s]pecifically, LaRock conferred benefits on Kunchick and PCI in the form of: labor and services with a value of approximately $25,000; accounts receivable in the amount of $112,000;" and a list of multiple items of personal property. CP at 873. Again, because Kunchick does not challenge

any of these findings, they are verities on appeal. *Humphrey Indus., Ltd.*, 176 Wn.2d at 675. These findings support the trial court's conclusion that LaRock is entitled to that property or its value.

Accordingly, we hold that the trial court's written conclusion controls, a partnership did not exist, and the trial court specifically found which benefits accrued to Kunchick personally. Therefore, the damages awarded for unjust enrichment were proper and were supported by the trial court's unchallenged findings of fact.

## V. ISSUES RAISED FOR THE FIRST TIME ON APPEAL

Kunchick raises two arguments for the first time on appeal: that (1) he should not be held personally liable because LaRock did not plead or prove corporate disregard below, and (2) unjust enrichment is not an appropriate theory of recovery where LaRock has unclean hands. These arguments fail.

In general, we will decline to consider arguments that are raised for the first time on appeal. RAP 2.5(a). There are exceptions to this general rule where the party seeking to raise an argument for the first time asserts a lack of jurisdiction, a "failure to establish facts upon which relief can be granted," or where the argument concerns a "manifest error affecting a constitutional right." RAP 2.5(a). However, none of these exceptions apply.

### A. PERSONAL LIABILITY AND CORPORATE DISREGARD

Kunchick argues that the trial court erred when it held him personally liable for unjust enrichment, conversion, and replevin because LaRock did not plead or prove corporate disregard. But the trial court did not have the opportunity to consider Kunchick's corporate disregard theory

because he raises it here for the first time.[7] *See Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 291, 840 P.2d 860 (1992) ("the purpose of RAP 2.5(a) is met where the issue is advanced below and the trial court has an opportunity to consider and rule on relevant authority"). We, therefore, need not address it.

In addition, as discussed above in sections III and IV, the trial court found Kunchick personally responsible for conversion and determined the specific unjust enrichment benefit that accrued to Kunchick personally. It was unnecessary to pierce the corporate veil to hold Kunchick personally liable for his own, individual conduct. Accordingly, this argument fails.

### B. Unclean Hands and Unjust Enrichment

Next, Kunchick argues that the trial court erred when it awarded damages based on a theory of unjust enrichment because LaRock has unclean hands. We decline to consider whether the unclean hands doctrine defeats LaRock's claim for unjust enrichment because Kunchick raises it for the first time on appeal and unclean hands does not fall within one of the RAP 2.5(a) exceptions.

### VI. Conclusion

We hold that the trial court did not err when it concluded that (1) LaRock had standing to sue because the AJL transfer was not fraudulent or an improper shareholder distribution, (2) Kunchick and PCI are liable for conversion because LaRock revoked his consent, (3) unjust enrichment benefits

---

[7] Kunchick argues that he raised corporate disregard below in his objections to conclusions 10 and 16 to LaRock's posttrial proposed findings of fact and conclusions of law. However, these objections were insufficient to preserve an argument that corporate disregard prevents individual liability. Moreover, Kunchick did not raise these objections until after the court had announced its ruling.

No. 45490-4-II

were conferred on both Kunchick and PCI, and (4) Kunchick was personally liable for his individual actions. Therefore, we affirm the trial court's decision in all respects.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.

JOHANSON, C.J.

We concur:

MAXA, J.

LEE, J.